UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ODELL LEE ROBERTSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-7418** |
| **JEFFERSON PARISH CORRECTIONAL CENTER, ET AL.** | **SECTION "T"(4)** |

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A, and as applicable, 42 U.S.C. § 1997e(c)(1) and(2).  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

**I.   Background**

   **A.   Complaint (ECF No. 4)**

Plaintiff Odell Lee Robertson ("Robertson") is a convicted inmate currently housed in the Franklin Parish Detention Center in Winnsboro, Louisiana.  ECF No. 4, ¶III, at 3.  Robertson filed this *pro se* and *in forma pauperis* suit pursuant to 42 U.S.C. § 1983 against defendants Jefferson Parish Correctional Center ("JPCC") and Deputy Joseph Trosclair of the Jefferson Parish Sheriff's Office ("JPSO").  *Id*., ¶III(B)-(C), at 4.  Robertson alleges that on July 29, 2023, while he was a pretrial detainee housed in JPCC, he was escorted from the shower to his cell by Deputy Trosclair.  *Id*. at 6.  Robertson alleges that Deputy Trosclair locked him in his cell and then tried to close the food slot.  Robertson claims that the food slot was the only space for air circulation at the time because the air conditioner in his cell was not working.  Robertson states in his complaint that he put his hand over the food slot to prevent Deputy Trosclair from closing it.

Robertson claims that he then asked Deputy Trosclair to call for a ranking officer, which angered the Deputy. Robertson alleges that the Deputy ordered him to remove his hand. Robertson indicates that he refused to move his hand and again ask that a ranking officer be called. After this, Robertson alleges that Deputy Trosclair brought out his MEB night stick ("MEB") and told Robertson again to remove his hand from the food slot or he would strike Robertson with his MEB. When he again refused, Robertson alleges that Deputy Trosclair struck the food slot with his MEB as a warning. Robertson alleges that he still refused to move his hand, and that Deputy Trosclair then struck Robertson's hand twice with the MEB. Robertson claims that he still did not move his hand to allow the slot to close until Deputy Trosclair pulled out a mace can.

Robertson alleges that immediately after the incident, he was seen by Nurse D. Washington and was told that he would be seen by a doctor for x-rays. Robertson further alleges that this doctor's visit had not occurred by the time he prepared his complaint. Robertson also claims that Sergeant Williams was informed about the incident and investigated the events.

As relief, Robertson seeks $600,000 in compensation for Deputy Trosclair's use of unnecessary and excessive force. *Id.*, ¶V, at 5.

**B.      Attachments to Complaint (ECF No. 4-1)**

With his complaint, Robertson provided a copy of an Inmate Grievance Form dated August 31, 2023, in which he complained about the incident described in his § 1983 complaint. ECF No. 4-1, at 1. On the form, Robertson similarly asserted that he continually blocked the food slot and requested to see a ranking officer but Deputy Trosclair ignored his requests and took matters into his own hands, which led to the strikes with the MEB. Robertson acknowledged that he spoke with Sergeant Williams after the incident, and she advised him that she would speak with Deputy Trosclair about what happened that day.

The response to the grievance from Major Edward Olsen, dated September 5, 2023, indicates that the claim of unreasonable use of force was submitted to the JPSO Internal Affairs for investigation. *Id*. at 2.

Robertson also provided a copy of an inmate disciplinary action report dated August 1, 2023, which notified him that he would be called before a Disciplinary Board on August 3, 2023, to answer to four rule violations: verbal abuse; refusing to obey an order; blocking any locking device; and sexual propositions towards another person. *Id*. at 4. The attached JPCC Incident Report written by Deputy Trosclair on July 29, 2023, confirms Robertson's account of the incident. In the report, the Deputy indicated that, around 12:15 p.m., he heard Robertson yelling. He went to Robertson's cell to close the food slot, but Robertson put his hand over the slot preventing the Deputy from closing it. Robertson refused to comply with the Deputy's order to remove his hand. The Deputy then advised Robertson to remove it or he would strike him with his MEB. The Deputy reported that Robertson then said "do it," so the Deputy struck the food slot as a warning. *Id*. Robertson still did not move his hand. The Deputy then struck Robertson's hand with the MEB, and Robertson immediately moved his hand, stating "F*ck you b*tch, suck my d*ck." *Id*. The Deputy was then able to close the slot.

      C.      **<u>Robertson's Responses to the Court's Orders for More Information</u>**

In connection with the Court's mandatory statutory review for frivolousness pursuant to 28 U.S.C. § 1915, § 1915e, and 42 U.S.C. § 1997e, on April 15, 2024, the Court ordered Robertson to provide, among other things, copies of the jail officials' investigation results, any additional responses to his July 29, 2023, grievance complaint, and the resolution of the rule violations disciplinary charges, including any punishments he may have received after the disciplinary proceedings. ECF No. 7. Robertson submitted a written response to the Court's order that repeated

3

the incident described in his complaint. ECF No. 8, at 1. He also asked that counsel subpoena the camera footage of the incident on July 29, 2023, and the "SIU" or internal affairs unit's record of his grievances. *Id*. at 2. Robertson also noted that he had provided copies of the disciplinary report and grievance with his § 1983 complaint and had no other documents to provide to the Court. *Id*.

Because Robertson did not provide a complete response to the first Order, the Court issued a second Order on June 4, 2024, for Robertson to provide the following:

(1) Copies of any documents related to the review or appeal of his grievance complaint related to the July 29, 2023, incident with Deputy Trosclair. If Robertson does not have any additional documents from the grievance process, he shall provide the Court with a written statement explaining what steps he took and providing the response(s) from the JPCC officials at each step of the grievance process;

(2) Copies of any documents related to the JPCC officials' investigation into the July 29, 2023, incident with Deputy Trosclair. If Robertson does not have any documents, he shall provide the Court with a written statement indicating what he was told about the investigation and/or the results of the investigation; and

(3) Copies of any documents related to the disciplinary charges, the results of any disciplinary hearing or other resolution of the disciplinary charges, and any sentences or punishments he received as a result of the disciplinary charges. If Robertson does not have any additional documents, he shall provide a written statement indicating whether he appeared at a disciplinary hearing about the disciplinary charges, the resolution of the disciplinary charges (for example, found guilty, not guilty, or charges dropped), and any sentence or punishment he received as a result of the disciplinary charges.

In his response received on June 20, 2024, Robertson stated that he had no other documents to provide. ECF No. 10, at 1. However, he indicated that after his grievance complaint was screened by the security investigation unit ("SIU"), he received a response stating that Deputy Trosclair had acted within the JPCC policy and procedure guidelines. Robertson indicated that he appealed to the next step, but he was transferred to another jail before he received a response. *Id*. at 2.

In addition, Robertson reiterated that he was charged with four rule violations and was found guilty on each. *Id*. He indicated that he received a sentence of 14 days in solitary confinement. He also again asked that the Court subpoena his records from internal affairs and SIU along with any camera footage of the incident. *Id*. at 3.

**II.    Standards for Frivolousness Review**

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318, 325 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous when it lacks an arguable basis either in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). "A [claim] lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d 882, 889 (5th Cir. 1998)). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (citing *Neitzke*, 490 U.S. at 327-28). Thus, the Court must determine whether plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

**III.** **Discussion**

    **A.** **JPCC is Not a Proper Defendant**

Robertson named the JPCC as a defendant, but it is not a proper defendant for purposes of § 1983. A plaintiff bringing a § 1983 complaint is required to identify both a constitutional violation and the responsible person acting under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978). The JPCC, however, is not recognized as a "person" within the meaning of § 1983. *See Douglas v. Gusman*, 567 F. Supp. 2d 877, 892 (E.D. La. Jun. 9, 2008) (Order adopting attached Report and Recommendation).

In Louisiana, a jail facility is not an entity "legally empowered to do" anything independent of either the responsible parish officials or the parish sheriff. *Roberts v. Sewerage and Water Bd. of New Orleans*, 634 So. 2d 341, 347 (La. 1994). Because a jail is not a juridical entity under state law, "a prison or jail or its administrative departments are not entities that can be sued under Section 1983 . . ." and jails "are not persons for purposes of suit under Section 1983 as the statute and case law define that term." *Douglas*, 567 F. Supp. 2d at 892; *see* Fed. R. Civ. P. 17(b). As one division of this Court has noted, a parish jail is "not an entity, but a building." *See Jones v. St. Tammany Parish Jail*, 4 F. Supp.2d 606, 613 (E.D. La. May 8, 1998) (dismissing with prejudice the St. Tammany Parish Jail as an improper defendant); *see also Kerr v. Orleans Parish Sheriff's Office Prison*, No. 15-0746, 2015 WL 4755174, at *1 (E.D. La. Aug. 10, 2015).

Consequently, Robertson's claims against the JPCC should be dismissed under 28 U.S.C. § 1915 and § 1915A as frivolous and for failure to state a claim for which relief can be granted.

    **B.** **Claims Against Deputy Trosclair**

Robertson named Deputy Trosclair as a defendant claiming that the incident with the food slot was an unreasonable use of force by the Deputy. Broadly construing his complaint, Robertson

claims that Deputy Trosclair overstepped his authority when he struck Robertson in the hand with his MEB despite the fact that Robertson willfully disobeyed the Deputy's multiple commands to move his hand so that the Deputy could close the food slot.

      a.    **<u>Disciplinary Violations</u>**

As an initial matter, Robertson does not clearly indicate that he is challenging the disciplinary charges or the 14-day isolation punishment he received for his disciplinary violations arising out of the food slot incident. Nevertheless, even if he intended to do so, his claims would be frivolous.

The law is clear that a prisoner has no constitutionally protected due process right in connection with prison disciplinary proceedings unless the proceeding resulted in a loss of good-time credits or similar extension of his criminal sentence. *Sandin v. Conner*, 515 U.S. 472, 483-87 (1995); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995). Robertson, a pretrial detainee at the time, does not indicate that he suffered such a loss. Instead, he states that he received a sentence of 14-days in isolation. "Segregated confinement is not grounds for a due process claim" when it does not impose an atypical hardship under *Sandin*. *Hernandez v. Valasquez*, 522 F.3d 556, 562-63 (5th Cir. 2008). Robertson's disciplinary sentence, therefore, was not an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life" nor did it "inevitably affect the duration of his sentence." *Sandin*, at 484 & 487. Therefore, Robertson has no due process challenge to the disciplinary proceeding.

For these reasons, to the extent if any, Robertson asserts due process violations arising from the disciplinary violations and proceedings against him, his claims should be dismissed pursuant to 28 U.S.C. § 1915, § 1915A, and as applicable, 42 U.S.C. § 1997e as frivolous and for failure to state a claim for which relief can be granted.

  b.  **<u>Excessive Force</u>**

As noted above, under a broad reading of his complaint and other pleadings, Robertson does not actually challenge the disciplinary proceeding or sentence he received. To that end, Robertson also does not deny that he defiantly refused Deputy Trosclair's orders and refused to move his hand to allow the Deputy to secure the food slot. He instead focuses his claims on his contention that Deputy Trosclair's use of the MEB to strike his hand was an unreasonable or excessive response to his repeated refusal to obey the Deputy's orders. He also claims that it exceeded the Deputy's authority under the jail's rules.

As an initial matter, because Robertson was found guilty of the rule violations arising from the incident, the Court must determine whether Robertson's claims are barred under the *Heck* doctrine[1] as applied to disciplinary proceedings. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (a prisoner's claim for declaratory relief and money damages, based on alleged due process violations in a prison disciplinary proceeding that resulted in the loss-good time credits "necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983").

Under the circumstances alleged by Robertson, the validity of the disciplinary proceedings is not called into question by the Court's review of Robertson's claims of excessive force. The Court is able to assess the need for the use of force without regard for whether Robertson's actions violated jail rules. Even if the MEB had not been used, Robertson admittedly disobeyed Deputy Trosclair, blocked the Deputy's ability to close and lock the food slot, and was verbally abusive to

---

[1] In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a prisoner cannot bring a § 1983 action for relief from a sentence or conviction "until that conviction has been reversed on direct appeal, expunged by executive order, or otherwise declared invalid in a state collateral proceeding or by the issuance of a federal writ of habeas corpus, if a favorable judgment would necessarily imply the invalidity of the prisoner's conviction or the length of his confinement." *Id*. at 486-87.

8

the Deputy. The fact that the MEB was used in the situation does not impact the validity of the rules violation or disciplinary proceedings against Robertson. For this reason, and because Robertson did not lose good-time credits or suffer a similar atypical impact to his term of imprisonment, the *Heck* doctrine does *not* apply to bar review of Robertson's excessive force claim. *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (in situation where inmate did not lose good time credits, *Heck* doctrine is "not . . . implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence."); *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998).

Nevertheless, Robertson's excessive force claim against Deputy Trosclair is also frivolous. The use of force against a pretrial detainee is "excessive" and a violation of the Fourteenth Amendment when the use of force was objectively unreasonable. *Fairchild v. Coryell Cnty., Tex.*, 40 F.4th 359, 362 (5th Cir. 2022) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015)); *Andrew v. St. Tammany Par.*, No. 15-2105, 2016 WL 447680, at *7 (E.D. La. Jan. 15, 2016) (citing *Brown v. Gusman*, No. 15-1491, 2015 WL 6827260, at *3-4 (E.D. La. Nov. 6, 2015)), *report and recommendation adopted by* 2016 WL 430455, at *1 (E.D. La. Feb. 4, 2016). The Court may consider several factors to determine the reasonableness of the force used, including the non-exhaustive list provided in *Kingsley*: (1) "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury;" (2) "any effort made by the officer to temper or to limit the amount of force;" (3) the severity of the security problem at issue; (4) the threat reasonably perceived by the officer;" and (5) "whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 397. The court is to look only to the objective reasonableness of the force without regard to the officer's underlying intent or motivation. *Gonzalez v. Seal*, No. 13-

34, 2013 WL 6244183, at *8 (E.D. La. Dec. 3, 2013) (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)).

"[A] pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley*, 576 U.S. at 398 (citing *Bell v. Wolfish*, 441 U.S. 520, 540 (1979); *Block v. Rutherford*, 468 U.S. 576, 585-86 (1984)); *see also Andrew*, 2016 WL 447680, at *8 (citing *Thompson v. Beasley*, 309 F.R.D. 236, 247 (N.D. Miss. Jul. 13, 2015)) (discussing that while *Kingsley* used the disjunctive "or," courts post-*Kingsley* have framed the inquiry as "whether, from an objective point of view [defendant's] actions were rationally related to a legitimate, nonpunitive governmental purpose and whether his actions were excessive in relation to that purpose.").

"A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley*, 576 U.S. at 397 (quoting *Graham*, 490 U.S. at 396). Thus, "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). In determining reasonableness, the Court must consider that officers "are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. In the prison setting, a Court must also take into account policies and practices that are deemed necessary by jail officials for the legitimate interests of preserving internal order, discipline, and institutional security. *Kingsley*, 576 U.S. 397 (citing *Bell*, 441 U.S. at 540 & 547). However, a claim that a jail official failed to follow jail policy does not alone state a cognizable constitutional

10

claim. *Samford v. Dretke*, 562 F.3d 674, 681 (5th Cir. 2009) ("[A] prison official's failure to follow the prison's own policies does not, itself, result in a constitutional violation.").

Using the factors set forth above, Robertson has alleged a frivolous claim of excessive force. Robertson avers in his complaint that he actively and intentionally defied Deputy Trosclair's orders to move his hand away from the food slot. He also concedes that he kept his hand in place for the purpose of preventing Deputy Trosclair from securing the food slot as part of locking Robertson into his cell. According to Robertson's complaint and the attached documents, Deputy Trosclair attempted several times to seek Robertson's compliance, including at least two warnings that he would escalate to striking Robertson's hands if Robertson did not comply. When Robertson continued to block the flood slot, the Deputy struck his hand with the MEB. The strike to the hand was sufficient to prompt Robertson to pull his hand away, at which time Robertson cursed at the Deputy and the Deputy secured the hatch. Robertson also alleges that he received an immediate medical examination of his hand, and he does not claim that he received more than discomfort to his hand.

Under these facts described by Robertson in his complaint, the use of force by Deputy Trosclair was reasonable and warranted to restore discipline and secure the cell while Robertson remained in open defiance of his orders and did not heed the threat of physical escalation. "Ensuring security and order at the institution is a permissible nonpunitive objective, whether the facility houses pretrial detainees, convicted inmates, or both." *Bell*, 441 U.S. at 561. When a pretrial detainee, like Robertson, refuses to comply with a guard's repeated orders, the use of some degree of force by officers is justified to maintain or restore discipline. *See Sanchez v. Griffis*, 569 F. Supp. 3d 496, 511 (W.D. Tex. Nov. 2, 2021); *see also Schneider v. Kaelin*, No. C-12-233, 2013 WL 1867611, at *5 (S.D. Tex. Apr. 21, 2013) (observing that "[t]he Fifth Circuit has consistently

found no excessive force where prison officials employ force against inmates refusing to comply with orders") (citations omitted).  The force used by Deputy Trosclair, after multiple orders and warnings to Robertson, was used in an effort to regain control of the situation and secure Robertson's cell.  The force did not continue beyond the point when Robertson moved his hand.

Thus, under the foregoing precedent, Robertson's continued refusal to obey Deputy Trosclair's orders was a reasonable basis for the Deputy to determine that additional force was necessary to obtain Robertson's compliance and secure the hatch to the cell.  *Darden v. City of Fort Worth, Tex.*, 880 F.3d 722, 729 (5th Cir. 2018) (jail officials may consider a pretrial detainee's refusal to comply with instructions when assessing whether physical force "is needed to effectuate the [detainee's] compliance.") (quoting *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009)).[2] Robertson indicates in his complaint that he had no plan to move his hand until the Deputy struck him, or until he pulled out a mace can.  In other words, even under the threat of being hit with the MEB on the hand, and knowing he was defiantly disobeying direct orders, Robertson was not going to comply with Deputy Trosclair's orders until the Deputy escalated the situation.  By Robertson's own assertions, the use of the MEB by the Deputy was the only reasonable and necessary means to gain Robertson's compliance and reasonable and necessary for the Deputy to gain control sufficient to secure and close the food slot.

Therefore, Robertson has not alleged that Deputy Trosclair's actions were unreasonable or unnecessary to restore order in the situation he himself described.  Robertson's § 1983 excessive

---

[2] *See also*, *Rios v. McBain*, No. 04CV84, 2005 WL 1026192, at *7 (E.D. Tex. Apr. 28, 2005) ("open defiance of orders plainly poses a threat to the security of the institution, regardless of whether or not the defiance is emanating from within a locked cell"), *report and recommendation adopted by* 2005 WL 1026192 (E.D. Tex. Apr. 28, 2005); *Minix v. Blevins*, No. 06-306, 2007 WL 1217883, at *24 (E.D. Tex. Apr. 23, 2007) (even when a prisoner believes an order to be "unjustified and improper, this does not give him the right to disobey them at his whim").

force claims against Deputy Trosclair must be dismissed pursuant to 28 U.S.C. § 1915 and § 1915A, and as applicable, 42 U.S.C. § 1997e as frivolous and otherwise for failure to state a claim for which relief can be granted.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that plaintiff Odell Lee Robertson's 42 U.S.C. § 1983 claims against defendants Jefferson Parish Correctional Center and Deputy Joseph Trosclair be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e) and § 1915A, and, as applicable, 42 U.S.C. § 1997e, as frivolous and otherwise for failure to state a claim for which relief can be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[3]

New Orleans, Louisiana, this 12th day of July, 2024.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[3] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.